**Major DAVIS and Mary Crumes, Appellants,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 17, 1978.

Edwin F. Kagin, Jr., Donald E. Armstrong, Jr., Louisville, for appellants.

Robert F. Stephens, Atty. Gen., John W. Stewart, Asst. Atty. Gen., Frankfort, for appellee.

Before HAYES, VANCE and WHITE, JJ.

VANCE, Judge:

Appellant Mary Crumes was indicted and convicted of theft by deception involving more than $100.00, a class D felony, and of criminal conspiracy to rig a sports contest, a class B misdemeanor.

Appellant Major Davis was convicted of complicity in theft by deception and with tampering with or rigging a sports contest.

All charges arose out of the promotion of a "Miss Black U.S.A." beauty pageant in Louisville. Appellant Crumes promoted the State of Kentucky pageant under a franchise granted by appellant Davis, the founder of the national pageant.

The charges, as they relate to theft by deception, concern the solicitation of a donation from the City of Louisville by the appellant Crumes. The solicitation was made by letter which read as follows:

"We are adults working with youths and their problems. This project will be promoted through all available channels: ra-

dio, newspaper, television, people and businesses beginning the first week of February. Young Black ladies from all areas of our city are seeking sponsorship. Donations toward our plan of procedure will be greatly appreciated. Portions of funds will be given to the sickle cell awareness foundation. The pageant's overall expenditures include: building, schoalarship, (sic), personality workshops, photos, advertising, trophies, band, program books, *national franchise fee,* transportations and lodging. All donations are tax deductable (sic). Please help us to meet these goals."

A donation of Two Hundred Dollars was made by the City of Louisville. A check was sent to appellant Crumes accompanied by a letter which stated the intended use of the funds and which required the return of an acknowledgement of receipt. The letter and receipt read as follows:

April 6, 1976
Ms. Mary Crumes, Director
Miss Black U.S.A. Beauty Pageant, Inc.
330 Glendora Avenue
Louisville, Kentucky 40212

Dear Ms. Crumes:

Enclosed, please find a Contingency Fund check in the amount of $200.00. These funds are to be used for support of the 1976 Miss Black U.S.A. Beauty Pageant.

Please sign the below acknowledgement and return in the enclosed envelope. Thank you.

Sincerely,

HARVEY I. SLOANE, MAYOR
CITY OF LOUISVILLE

City of Louisville Check # 734482
Amount of $200.00

I hereby acknowledge receipt of the above check to be expended as outlined above.

 /s/ Mary Crumes
  Director of Miss Black     Kentucky U.S.A.
TITLE
 Beauty Pageant
DATE 4/30/76

It is the Commonwealth's contention that theft by deception was committed because no monies were donated to a sickle cell awareness foundation and none was used for scholarships.

It is clear that the solicitation was made to defray the costs of putting on the pageant and was so understood by the city officials responsible for the donation. Those officials did not purport to have any knowledge that the donation was misused. There was no evidence that the pageant made any profit; in fact, the evidence indicates it was promoted at a loss. We do not believe the solicitation gave any basis for an impression that the donation would not be used in its entirety, if necessary, to defray the costs of the pageant.

■ As far as we can determine from the record, there is no proof that the donation was used in any different manner than intended by the donor. The evidence was insufficient to sustain a conviction and appellant Crumes motion for directed verdict should have been sustained. The charge of complicity against appellant Davis must necessarily fall with the dismissal of the main charge against appellant Crumes.

■ The convictions for tampering with the outcome of a sports contest must be reversed because a beauty pageant is not a sports contest. KRS 518.060 provides as follows:

(1) A person is guilty of tampering with or rigging a sports contest when, with intent to influence the outcome of a sports contest, he:

(a) Tampers with any sports participant or sports official or with any animal, equipment or other thing involved in the conduct or operation of a sports contest in a manner contrary to the rules governing the sports contest in question; or

(b) Substitutes a sports participant, animal, other than a horse, equipment or other thing involved in the conduct or operation of a sports contest for the genuine person, animal or thing.

A sports contest is defined by KRS 518.-010(3) as any professional or amateur sport, athletic game or contest, or race or contest involving machines, persons or animals that is viewed by the public.

The Commonwealth contends that it was the intention of the legislature in enacting KRS 518.060 to make it a crime to tamper with the outcome of any contest, sport or otherwise, and that a beauty pageant is "a . . . contest involving . . . persons . . . that is viewed by the public" and thus fits the statutory definition of *sports contest.*

This contention ignores the word "sports" in the title of the act and also that the word contest in the definition section is clearly limited to professional or amateur sports, athletic games or races involving machines, persons or animals. We also note that KRS 518.060 is preceded in the statutes by KRS 518.040, sports bribery and KRS 518.050, receiving sports bribes and is followed by KRS 518.070, ticket scalping.

We think the proscription of KRS 518.060 was intended to be and is limited in application to sports contests as are normally understood by the usage of that term. If the general assembly intended the act to apply to all forms of contests, it certainly did nothing to make that intention clear by adding the words "sports" to the title and to the body of the act.

The judgment is reversed.

All concur.